GULF & S. I. R. Co. *v.* STILL.

(Division B. Feb. 19, 1934.)

[152 So. 824. No. 31006.]

Davis & Davis, of Purvis, and Chas. N. Burch, H. D. Minor, and Clinton H. McKay, all of Memphis, for appellant.

John A. Yeager, of Lumberton, for appellee.

Argued orally by **T. W. Davis, Sr.,** and **T. W. Davis,** **Jr.,** for appellant, and by **John A. Yeager,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Forrest county to recover damages against appellant for an injury received by him while attempting to board one of appellant's moving freight trains in the city of Jackson; the injury was alleged to have been caused by the negligence of appellant's employees operating the train. The trial resulted in a judgment of one thousand dollars in favor of appellee. From that judgment appellant prosecutes this appeal.

Appellant requested a directed verdict in its favor, which the court refused to grant. That action of the court is the principal reliance of appellant for a reversal of the judgment. Taking the evidence for appellee to be true, as well as every reasonable inference therefrom, we are of the opinion that the court erred in not directing a verdict for appellant.

Stating the evidence most strongly for appellee, this was his case: Appellant's railroad line extends from Jackson in Hinds county to Gulfport in Harrison county. The tracks of the Illinois Central Railroad Company in the city of Jackson are elevated so that all street traffic and travel pass under the railroad tracks. Appellant's trains enter and leave the Union Depot on these elevated tracks. Appellee received his injury on the east, or left-hand, side of the elevated tracks going south at a point about a quarter of a mile from the depot. Appellee left Memphis, Tennessee, to go to Lumberton in Lamar county in this state, where his wife was. Before leaving Memphis, he made inquiry and learned that one of appellant's freight trains was due to leave Jackson during the night for Hattiesburg, where he was going in order to reach Lumberton. When he left Memphis, he intended to catch this freight train out of Jackson. He reached Jackson about eight or nine o'clock at night. He sought and interviewed appellant's special agent, who directed him where to board the train. Following directions, appellee went down into the railroad yard south of the Union Depot and took a position at a point where there were located two or three old passenger coaches. There was a switch stand just north of where appellee was standing. He waited at this point until the freight train started south about 10:30 o'clock at night. When the engine reached the main line track of appellant's road, appellee left his position and stepped over on to the railroad track and started up the track, meeting the train. Some distance before he met the engine, he stepped off of the

track on the east side, or left-hand side going south, and continued to walk north along the side of the track. He was far enough from the track to be in a place of safety. The fireman was in his seat in the engine, on appellee's side of the train, and on the same side another of appellant's employees was standing in the gangway, and on the opposite, or right side going south, the engineer was in his place. As the engine and cab passed appellee, he made what he called a "thumb sign" to the fireman—he stuck up his thumb, which he testified meant, among railroad men, that he wanted to board the train. He also testified that the fireman saw the sign. The train was running five or six miles an hour; when five or six cars had passed him, he undertook to board the train, and, as he took hold of the grabiron and attempted to swing himself up, he was either struck by a switch stand and knocked off or his hold broke and he was jerked to the ground and his left foot went under the train and was crushed by the wheels of the train and so mangled as to require amputation. His fall resulted from a sudden jerk or lunge of the train. This sudden jerk or lunge, in connection with appellee's thumbing the fireman, constituted the basis of his recovery.

Appellee testified that although, when he did the thumbing, the engineer, who was operating the train, could not see him, nevertheless the fireman, who did see him, could or should have informed the engineer of the fact, but he did not know whether he did so or not. Appellee's position is that, although he was a trespasser, appellant's employees in charge of the train knew of his peril and willfully and wantonly gave the train a lurch which they knew, or should have known, would probably cause injury to him.

Section 1111, Code 1930, is in this language: "If any person, other than passengers or employees engaged in operating the railroad, shall wilfully climb, jump, or step upon, or in any way attach himself to, or shall jump

off a locomotive, tender or car while in motion on a railroad track or siding, he shall, upon conviction, be fined not less than five dollars nor more than twenty-five dollars, or be imprisoned in the county jail not less than five days nor more than twenty-five days, or both.''

The special agent had no authority to give appellee permission to ride on the train, and, if he gave permission, that fact did not impose any greater duty upon appellant than not to wantonly or willfully injure appellee. Burks v. R. R., 153 Miss. 428, 121 So. 120.

In trying to board the train, appellee committed a crime —a misdemeanor—under the statute. Appellant's special agent, if appellee's testimony be true, was a party to that crime because of aiding and abetting in its commission. Appellant's train operators refused to participate in the crime, taking appellee's testimony as true. All who aid in the commission of a misdemeanor are principals. Williams v. State, 12 Smedes & M. 58; Beck v. State, 69 Miss. 217, 13 So. 835; Wiley v. State, 74 Miss. 727, 21 So. 797; Johns v. State, 78 Miss. 663, 29 So. 401; Reed v. Greenville, 83 Miss. 192, 35 So. 178; State v. Treweilder, 103 Miss. 859, 60 So. 1015.

The undisputed facts, therefore, are these: In trying to board the train appellee was guilty of gross negligence, and, in addition, committed a crime under the statute. The crime was participated in by appellant's special agent, but the operators of the train refused to participate therein. Their failure to do so, combined with the lunge of the train, appellee contends, fixed liability on the appellant; while appellant contends, without going any further, that those facts entitled it to a directed verdict—that the criminal statute was made for appellee's benefit, and its violation barred him from recovery. We do not decide this question. In passing, however, we feel constrained to say that it would be novel, so far as we are informed, to hold a railroad company liable for a personal injury caused by the commission of a crime

by the plaintiff in conjunction with the refusal of the railroad employees to participate therein.

We put our decision upon the ground that the evidence did not show, or tend to show, that appellee's injury was the result of either willful or gross negligence on the part of those operating appellant's train. There was no evidence that the jerk or lurch of the train was a negligent act. For aught that appears, such jerk or lurch might have been a necessary and usual operation of the train. Those in charge of the train were under no duty to either slow down or stop the train in order to permit appellee to board it—it was unlawful for them to do so; in doing so, they would have been guilty of a criminal offense under the statute. The engineer, who had immediate charge of the starting, running, and stopping of the train, did not know that appellee intended to board it, unless he was so informed by the fireman. There was no evidence that the fireman had informed him of that fact. The fireman was under no duty to do so, unless and until he saw and realized appellee's peril. There was no evidence showing, or tending to show, that the fireman observed and realized his peril.

Reversed, and judgment here for appellant.